IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| HDR ENGINEERING, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CASE NO. 1:22-cv-00079 |
| | § | |
| | § | |
| PROFESSIONAL SERVICE | § | |
| INDUSTRIES, INC. | § | |
| | § | |
| Defendant. | § | |

## JOINT PRETRIAL ORDER

On April 22, 2024, at 10:30 AM, a jury will hear evidence and arguments on the issue of the amount of damages Plaintiff HDR Engineering, Inc. ("HDR") is entitled to recover from Defendant Professional Service Industries, Inc. ("PSI") in the above-captioned action. HDR and PSI (collectively, the "Parties") respectfully submit this Joint Pretrial Order (the "Order").

1. **APPEARANCE OF COUNSEL**

*List each party, its counsel, and counsel's address and telephone number in separate paragraphs.*

   A.   **ATTORNEYS FOR PLAINTIFF, HDR ENGINEERING, INC.**

   **John Alex Huddleston**
   CLARK HILL PLC
   901 Main Street, Suite 6000
   Dallas, Texas 75202
   214-651-2081
   Fax: 214-651-4330
   Email: ahuddleston@clarkhill.com
   *and*
   **Cynthia Ellis Rosen**
   2301 Broadway
   San Antonio, Texas 78215
   210-250-6000
   Fax: 210-250-6100
   Email: crosen@clarkhill.com

B. **ATTORNEYS FOR DEFENDANT, PROFESSIONAL SERVICES INDUSTRIES, INC.**

**Gregory Norman Ziegler**
**Alex Johnathan Bell**
ZIEGLER GARDNER BELL, PLLC
901 Main Street, Suite 4960
Dallas, Texas 75202
214-241-4808
Fax: 469-901-5941
Email: gziegler@zgblaw.com
Email: abell@zgblaw.com

2. **STATEMENT OF THE CASE**

*Give a brief statement of the case, including relevant names, dates, and places, that can be read to the jury panel as an introduction of the case.*

This suit involves two parties: the Plaintiff is HDR Engineering, Inc. ("HDR") and the Defendant is Professional Services Industries, Inc. ("PSI"). The suit is based on the settlement of a retaining wall supporting a bulkhead at Oil Dock No. 6 at the Port of Brownsville ("Project"), which is owned by the Brownsville Navigation District.

HDR was hired by the Brownsville Navigation District to design Oil Dock No. 6, including the bulkhead and its retaining wall. To perform its structural design, HDR hired PSI, under the terms of a written contract, to provide geotechnical engineering services, including recommendations for the strength values and properties of the underlying soil for HDR to use in its design for the bulkhead retaining wall.

PSI performed soil borings and testing to determine the strength of the soil and provided a written report with its findings and recommendations to HDR in the fall of 2009 as part of HDR's design of the Project. HDR issued its design documents for Oil Dock No. 6 in May 2010, but the Brownsville Navigation District put the construction of the Project on hold due to lack of funding. Once the Project was funded, HDR issued a set of construction documents in February 2017 and construction of Oil Dock No. 6 was begun shortly afterward. The Project was completed in

December 2019.

Several months after the construction of Oil Dock No. 6 was complete, the Brownsville Navigation District observed settlement of an area of asphalt behind the bulkhead wall. On July 14, 2020, HDR was notified of the settlement by the Brownsville Navigation District. A few weeks after receiving the notification from the Brownsville Navigation District, HDR contacted PSI as well as the general contractor who constructed the Project, about the observations of settlement. HDR then began an investigation to determine the cause of the settlement. HDR also directed the placement of crushed stone on the waterside of the bulkhead to prevent further settlement and to stabilize the wall.

HDR also began to design a plan to repair and stabilize the retaining wall and the bulkhead. HDR proceeded with the finalization of the repair design and assisted the Brownsville Navigation District in the public bidding process and construction of the repair.

On August 4, 2021, HDR and the Brownsville Navigation District entered into a "Forbearance and Conditional Release Agreement," settling and releasing any potential claims by the Brownsville Navigation District against HDR upon the completion of the repair to the bulkhead wall and HDR's reimbursement of repair costs to the Brownsville Navigation District.

On June 30, 2022 after the repair was completed, HDR filed this suit against PSI. HDR asserts claims for negligence and breach of contract, alleging that PSI made errors and omissions in providing its geotechnical engineering services and that those errors and omissions caused the settlement of the retaining wall and the bulkhead

### 3.  **JURISDICTION**

*Briefly specify the jurisdiction of the subject matter and the parties. If there is an unresolved jurisdictional question, state it.*

Jurisdiction is not disputed. The Court has diversity jurisdiction over the lawsuit under 28

U.S.C. §1332 (a) (1) because HDR is a citizen of Nebraska, PSI is a citizen of Delaware, and the amount in controversy exceeds $75,000.00, excluding interest and costs. HDR is a Nebraska corporation with its principal place of business located at 1917 S. 67th Street, Omaha, Nebraska. PSI is a Delaware corporation with its principal office located in Harris County at 200 Westlake Park Boulevard, Suite 400, Houston, Texas 77079.

## 4. MOTIONS

*List pending motions.*

1) PSI's Motion for Summary Judgment on December 13, 2023, Docket No. 29.

2) PSI's Motion to Exclude Testimony of HDR's Expert Dr. John T. Bryant on December 13, 2023, Docket No. 28.

3) PSI's Motion to Exclude Non-Retained Expert Testimony Under FED. R. CIV. P. 37(c) on February 12, 2024, Docket No. 43.

## 5. CONTENTIONS OF THE PARTIES

*State concisely in separate paragraphs each party's claims.*

### A. Plaintiff's Contentions:

HDR was the prime engineering consultant for a construction project to build a new dock, Oil Dock 6, at the Port of Brownsville (the "Project"). The Project Owner was the Brownsville Navigation District.

To prepare the structural design of the Project, HDR required information and data related to the strength and other characteristics of the soil and other subsurface materials and conditions in the area where the Project is located.

HDR entered into a written contract with PSI dated June 15, 2009 entitled "Geotech Subconsultant Agreement" ("the Subconsultant Agreement").

HDR performed all of its obligations under the Subconsultant Agreement.

As required by the terms of the Subconsultant Agreement, PSI conducted sampling and field testing of the subsurface materials at the project site by performing soil borings to specified depths. In addition, PSI conducted laboratory testing on selected samples of the subsurface materials collected during the site exploration and borings. Based on the field exploration and laboratory analysis, Shailendra N. Endley, Ph.D., P.E. ("Endley"), an engineer employed by PSI, prepared and sealed a Geotechnical Exploration Report dated August 18, 2009 ("the geotechnical report") containing PSI's findings and making recommendations for HDR to use in preparing the structural design for the project.

Unfortunately, Endley negligently performed his professional engineering services in gathering and analyzing soil data and preparing the geotechnical report pursuant to the Subconsultant Agreement. As a result, PSI produced a geotechnical report for HDR's use that contained inaccurate information and flawed and erroneous design recommendations. Therefore, Endley and PSI breached the professional standard of care which should be observed by geotechnical engineers providing geotechnical engineering services under the same or similar circumstances.

At all times material to the performance of the professional engineering services that are the subject of the Subconsultant Agreement, Endley was an employee of PSI and performed engineering services in the course and scope of his employment. Therefore, PSI is vicariously liable for Endley's negligence or other tortious conduct under the doctrine of *respondeat superior*.

The negligent acts, errors and omissions by Endley and PSI include: (1) overestimating the shear strength parameters for the soil in the marine side of the sheet pile wall below the slope of the dredge line; (2) failing to perform any consolidated undrained triaxial tests in the passive zone in front of the sheet pile wall to properly determine the long term shear strength parameters of the

material in that location; and, (3) failing to neglect cohesion and/or peak shear strength parameters for their sheet pile wall recommendations and global stability analysis.

Relying on Endley and PSI's recommendations, HDR designed the structural components of the project including a sheet pile wall system with related structural elements. Eventually, however, the sheet piles and other related structural components for the Project began to move to an unacceptable degree causing the project to be unstable and at risk for structural failure.

After excessive movement of the sheet pile wall system and settlement of the material on the land side of the wall were discovered, HDR retained another geotechnical engineering firm to conduct additional subsurface exploration and testing. The results of the new testing and recommendations were compared with the information and recommendations provided by Endley and PSI. Based on its forensic investigation and analysis of the data, HDR determined that Endley and PSI had not properly conducted their subsurface exploration and analysis and had made design recommendations that adversely affected the design work performed by HDR. Because Endley and PSI negligently performed their geotechnical engineering services and made improper design recommendations, it was necessary for HDR to develop a remedial design for the Project. In connection with the remedial measures taken by HDR, HDR and the Brownsville Navigation District entered into a "Forbearance and Condition Release Agreement" effective August 4, 2021 under which HDR agreed to reimburse the Brownsville Navigation District for the construction of repairs to the Project.

Paragraph 4 of the Subconsultant Agreement states:

> 4. All of Subconsultant's services hereunder shall be performed within generally accepted standards of professional care and in compliance with all applicable laws, regulations, codes and other requirements; Subconsultant will obtain all required permits and licenses at Subconsultant's expense and Subconsultant will pay for all taxes, charges or fees associated with the performance of Subconsultant's services.

Therefore, in the performance of its contractual obligations, PSI agreed to perform its services with the degree of skill and competence normally employed by geotechnical engineers performing the same or similar services. The acts and omissions by Dr. Endley and PSI fell below the standard of care to be observed by a geotechnical engineer performing the type of services Endley and PSI performed for the project.

In addition, paragraph 15 of the Subconsultant Agreement states:

> 13. To the fullest extent permitted by law, Subconsultant will indemnify, defend and hold HDR, its employees, officers, directors, and agents harmless, from and against all liability, claims, losses, costs, expenses and fees arising out of this Project or this Agreement to the extent caused or alleged to have been caused by any negligent or wrongful acts, errors or omissions of Subconsultant, its agents, employees, subconsultants or suppliers.

Within a few weeks of the discovery of the settlement in July 2020, HDR notified PSI, through Dr. Endley, of the observation of the movement and asked PSI to participate in the forensic investigation, but PSI refused to do so. After HDR's forensic investigation was complete, in January 2021, HDR met with representatives of PSI and presented the findings and results of the forensic investigation and requested that PSI indemnify it for the costs incurred to design and implement the remedial measures required for the project due to PSI's negligent performance of its services. PSI refused to cooperate with HDR or accept any responsibility for the cost of repairing the project. On February 22, 2021 and May 20, 201, HDR sent letters notifying PSI in

writing of PSI's obligations under the Subconsultant Agreement and asked PSI to participate in the design and construction of the repair.

As a direct and proximate result of Endley's and PSI's negligent performance of their professional services, HDR sustained economic damages including: (1) the cost of performing the forensic investigation of the cause of the settlement in 2021; (2) the cost of designing a repair and stabilization plan in 2021 and 2022; (3) the cost of reimbursements to the Brownsville Navigation District for the construction of the repair and stabilization design in 2021 and 2022; (4) attorney's fees and costs in connection with this lawsuit.

As a direct and proximate result of PSI's conduct described above, HDR sustained money damages consisting of the cost of investigating the failure of the dock involved in the project, implementing temporary measures to slow the settlement and movement of the structural components of the project, designing permanent remedial repairs for the project, and paying for the construction of the repairs necessary to stabilize the project. The damages sustained by HDR as a result of PSI's negligence and breaches of the subconsultant agreement exceed $3,000,000.00. In addition to the economic damages incurred by HDR, HDR is entitled to recover its reasonable and necessary attorney's fees under Texas Civil Practice & Remedies Code Chapter 38 and under paragraph 16 of the subconsultant agreement.

B. **Defendant's Contentions:**

PSI contends that HDR has failed to prove that PSI was negligent or breached its contract with HDR. PSI met its contractual obligations and followed the generally accepted practice for geotechnical engineers rendering such services at the time the services were rendered and under the same or similar circumstances.

PSI further contends that HDR is barred from recovery by contractual limitations found in PSI's contract with HDR, HDR's contract with the Brownsville Navigation District, and

limitations and disclaimers in PSI's written report.

PSI further contends that HDR's own negligence caused or contributed to the damages it seeks here through deficient structural design of the project, failure to properly utilize the information in the geotechnical report provided by PSI, and failure to follow PSI's recommendations, guidance, and limitations found in the geotechnical engineering report.

PSI further contends that HDR did not suffer or incur and legally recognized damages. HDR did now own the bulkhead wall and thus did not suffer any injury. Rather, HDR chose to reimburse the BND for repairs to the wall regardless of fault to maintain their favorable business relationship. Seeking reimbursement of a voluntary indemnity payment to another is not the same as having suffered damages and can only be accomplished through contractual indemnity. This is yet another reason by HDR cannot recover in negligence and cannot show damages related to its breach of contract claim.

PSI further contends that HDR cannot recover in negligence because of the economic loss rule. The loss here was purely economic and was to the subject matter of the contract between HDR and PSI—Oil Dock 6. Therefore, HDR cannot recover in tort and is limited to contractual remedies.

PSI further contends that even if HDR can recover in negligence, its recover is limited or barred by its own negligence.

PSI further contends that HDR cannot recover on its contractual indemnity claim because it cannot provide the necessary expert testimony to prove its claim because it has not designated any expert to offer the necessary expert opinions or testimony to support the recovery of a reimbursement for a contractual indemnity claim. Under Texas law, an indemnitee seeking to recover a settlement with a third-party from the indemnitor is required to prove that potential

liability existed, and that the settlement was reasonable, prudent, and in good faith under the circumstances.

PSI further contends that the Limitation of Engineer's Liability clause in HDR's contract with the Brownsville Navigation district, flows down and applies to the claims against PSI. PSI also contends that the Waiver of Special, Incidental, Indirect, Or Consequential Damages clause in HDR's contract with the Brownsville Navigation district, similarly flows down and applies to the claims against PSI.

PSI further contends that HDR's claims should be barred by the equitable doctrine of laches. PSI performed its work on Oil Dock 6 in 2009. No issues were raised until the fall of 2020. Suit was not filed until 2022 and trial is proceeding in 2024. HDR's delay in suing PSI for recommendations made in its 2009 geotechnical engineering report have prejudiced PSI in its defense because PSI does not have the original documents or records from its work on the Project because of the passage of time. The alleged deficiencies in PSI's geotechnical engineering report, though denied by PSI, were present in the 2009 report and were known by HDR, or discoverable by HDR, long before it filed suit here. PSI's own report cautioned that PSI should be consulted when HDR finalized the design or made any material changes to the design. No such consultation ever occurred.

Finally, when PSI ultimately prevails at trial, it is entitled to its attorney's fees as a prevailing party under the HDR PSI contract.

6. **ADMISSIONS OF FACT**

*List all facts that require no proof.*

- HDR entered into a Standard Form of Master Agreement Between Owner and Engineer for Professional Services with the Brownsville Navigation District on May 6, 2009, for the design and construction of Oil Dock No. 6 at the Port of Brownsville.

- The Brownsville Navigation District issued Task Order No. 11A on May 7, 2009.

- The Brownsville Navigation District issued a Notice to Proceed with the Conceptual Design and the Preliminary Design phases of Task Order No. 11A on May 15, 2009.

- HDR and PSI signed the Geotechnical Subconsultant Agreement with PSI on June 15, 2009, for PSI to perform field exploration, subsurface investigation, laboratory testing, and to provide geotechnical recommendations in a written report as part of HDR's design for Oil Dock 6.

- Under the Geotech Subconsultant Agreement, PSI's services were to be "performed within generally accepted standards of professional care."

- PSI issued its Geotechnical Exploration Report, signed and sealed by Shailendra N. Endley, Ph.D., P.E., on August 18, 2009.

- After PSI issued its report, HDR asked PSI by email if the softer soil parameters could be used for the first 10 feet of soil in the slope on the marine side and stiffer soil parameters below the initial 10 feet. PSI reviewed the soil recommendations by Fugro Consultants for Cargo Dock 16 and approved this approach.

- After the email exchange regarding the soil parameters was approved by PSI, HDR did not contact PSI again regarding Oil Dock 6's design until after HDR was informed of the wall's movement and distress in 2020.

- HDR signed and sealed a set of 100% Submittal Construction Drawings Oil Dock No. 6 on May 14, 2010.

- HDR signed and sealed a set of Construction Drawings for Oil Dock No. 6 on February 3, 2017.

- Due to funding delays, construction did not begin on the Project until 2017.

- The bulkhead wall and cap were completed in May 2019.

- Substantial completion of Oil Dock No. 6 occurred in December 2019.

- On July 14, 2020, the Brownsville Navigation District notified HDR of cracking and settlement in the pavement behind the bulkhead wall.

- A 145-foot section of the 1,345-foot bulkhead wall at Oil Dock 6 experienced unexpected settlement.

- HDR conducted an investigation of the movement of the bulkhead wall.

- HDR reviewed the results of the investigation it conducted in a meeting with PSI in January 2021.

- HDR sent letters demanding indemnification to PSI on February 22, 2021 and May 20,

2021.

- On August 4, 2021, HDR and Brownsville Navigation District entered into a "Forbearance and Conditional Release Agreement."

- The repairs were constructed and completed in 2022.

- Dr. Shailendra Endley was an employee of PSI at all relevant times and his work on the Oil Dock 6 Project was in the course and scope of his employment with PSI.

## 7. CONTESTED ISSUES OF FACT

*List all material facts in bona fide controversy*.

- The bulkhead wall at Oil Dock 6 experienced horizontal movement or distress.

- The recommendations provided in PSI's Geotechnical Exploration Report were for HDR's use in preparing the conceptual and preliminary structural designs for the project.

- PSI's soil recommendations were improper or fell below the standard of care.

- The design of Oil Dock 6 changed between the time of PSI's Geotechnical Engineering Report and construction.

- HDR failed to follow all of PSI's geotechnical recommendations in designing the structural components of the sheet pile wall system.

- HDR failed to inform PSI of its design changes or consult with PSI about its design changes after PSI issued its Geotechnical Engineering Report.

- PSI should have recommended the use of fully-softened shear strength or residual strength in the parameters it provided to HDR in its Geotechnical Engineering Report.

- HDR informed PSI of the observed distress within weeks of the notification by the Brownsville Navigation District

- PSI refused to participate in the investigation conducted by HDR or to participate in the design of the repair and stabilization plan, to reimburse the costs of the construction of the repair to the bulkhead wall, or to indemnify HDR.

## 8. AGREED PROPOSITIONS OF LAW

*List the legal propositions that are not in dispute*.

### Breach of Contract

Under Texas law, the elements of an action for breach of contract are: (1) there is a valid,

enforceable contract; (2) the plaintiff performed its contractual obligation; (3) the defendant breathed the contract; and (4) the defendant's breach caused the plaintiffs damages. *Aguiar* v. *Segal,* 167 S.W.3d 443,450 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

"[I]f a contract is worded so that it can be given a definite legal meaning, it is not ambiguous and its construction is a matter of law." *Curlett Fam. Ltd. P'ship, Ltd. v. Particle Drilling Techs., Inc.*, 254 Fed. Appx. 320, 323 (5th Cir. 2007) (citing *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983)). "When a contract is expressed in unambiguous language, its terms will be given their plain meaning and will be enforced as written." *A2D Techs. Inc. v. MJ Sys., Inc.*, 269 Fed. Appx. 537, 541–42 (5th Cir. 2008) (citing *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005)).

The parol evidence rule prohibits the use of extrinsic evidence to contradict, vary, or add to the terms of an unambiguous contract. *In re H. E. Butt Grocery Co.,* 17 S.W.3d 360, 369 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). "When a contract is expressed in unambiguous language, its terms will be given their plain meaning and will be enforced as written." *A2D Techs. Inc. v. MJ Sys., Inc.*, 269 Fed. Appx. 537, 541–42 (5th Cir. 2008) (citing *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005)).

**Negligence**

Under Texas law, the elements of an action for negligence are: 1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from the breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). In a negligence cause of action, the threshold issue of the existence of a duty is determined by the court as a matter of law. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009).

**HDR must prove the standard of care owed by PSI and the breach of that standard with expert testimony**

Expert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of a layperson. *In re Voluntary Purchasing Groups, Inc. Litig.*, No. CIV. 3:94-CV-2477-H, 2003 WL 21499263, at *5 (N.D. Tex. June 24, 2003). Professional negligence in the context of engineering services means doing that which an engineer of ordinary prudence in the exercise of ordinary care would not have done under the same or similar circumstances or failing to do that which an engineer of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances. *Parkway Co. v. Woodruff*, 857 S.W.2d 903, 919 (Tex. App.—Houston [1st Dist.] 1993), aff'd as modified, 901 S.W.2d 434 (Tex. 1995). This standard of care must be established by the testimony of a qualified expert. *Id*.

**HDR must prove causation of damages with expert testimony**

"Proof other than expert testimony will constitute some evidence of causation *only* when a layperson's general experience and common understanding would enable the layperson to determine from the evidence, with reasonable probability, the causal relationship between the event and the condition." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006). "And when the causal link is beyond the jury's common understanding, expert testimony is necessary." *Alexander v. Turtur & Associates, Inc.*, 146 S.W.3d 113, 119–20 (Tex. 2004).

9. **CONTESTED PROPOSITIONS OF LAW**

*State briefly the unresolved questions of law, with authorities to support each*.

**Breach of Contract**

PSI is entitled to the application of the Limitation of Engineer's Liability and Waiver of Special, Incidental, Indirect, Or Consequential Damages clauses to the breach of contract and indemnity claims alleged by HDR.

The plain language of the agreement between PSI and HDR expressly incorporates the Prime Agreement between HDR and the Owner, the Brownsville Navigation District. "[I]t is well

established that parties having agreed upon the measure of damages for breach of their contract are accordingly bound." *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 67 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The Texas Supreme Court has held that Limitation-of-liability clauses are generally valid and enforceable. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 231 (Tex. 2019).

HDR denies that the limitation of liability clause between HDR and the BND applies to HDR's claims against PSI because HDR's claims are not claims asserted "by, through, or under" the Owner. *Manhattan Const. Co. v. Hood Lanco, Inc.,* 762 S.W.2d 617, 619 (Tex. App.—Houston [14th Dist.] 1988, writ denied); *Boles v. Bombardier Inc.* 31 Fed. Appx. 836 (5th Cir. 2002).

HDR contends that the consequential damages waiver in the Subconsultant Agreement does not bar its recovery of internal costs caused by PSI's professional errors and omissions because such costs are direct, not consequential damages. *Nationstar Mortgage LLC v. Barefoot*, 654 S.W.3d 440, 455-56 (Tex. App.—Houston [14th Dist.] 2021, pet. denied) (*citing Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997)).

**Indemnity**

HDR did not designate any expert to testify about the reasonableness of the settlement agreement or establish its potential liability to the Port.

"Under Texas law, where an indemnitee enters into a settlement with a third party, it may recover from the indemnitor only upon a showing that potential liability existed, and that the settlement was reasonable, prudent, and in good faith under the circumstances." *Ins. Co. of N. America v. Aberdeen Ins. Services,* 253 F.3d 878, 888 (5th Cir.2001) (citing *Transamerica Ins. v. Avenell,* 66 F.3d 715, 721 n. 15 (5th Cir. 1995)). The Texas Supreme Court has held that the

indemnitee must "establish that from its standpoint the settlement was made in good faith and was reasonable and prudent under the circumstances." *XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 152–53 (5th Cir. 2008)(citing *Mitchell's, Inc. v. Friedman,* 157 Tex. 424, 431, 303 S.W.2d 775 (Tex.1957)).

HDR contends that expert testimony is not required to support the reasonableness of the Forbearance and Conditional Release Agreement between HDR and the Brownsville Navigation District because it does not involve a payment for personal injury damages, and the testimony of fact witnesses, lay opinions, and documentary evidence are sufficient evidence to support the reasonableness of a settlement outside the personal injury context. See S*ieber & Calicutt, Inc. v. La Gloria Oil & Gas Co.,* 66 S.W.3d 340, 348 (Tex. App.—Tyler 2001, pet. denied). *Amerada Hess Corp. v. Wood Grp. Prod. Tech.,* 30 S.W.3d 5, 8-9 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Arce, cited by Amerada, involved claims by personal injury plaintiffs against their attorney. *Arce v. Burrow*, 958 S.W.2d 239, 243-44 (Tex. App.—Houston [14th Dist.] 1997), *rev'd in part on other grounds*, 997 S.W.2d 229 (Tex. 1999); *Ins. Co. of N. America v. Aberdeen Ins. Services*, 253 F.3d 878, 890-91 (5th Cir. 2001) (ample evidence supported jury's conclusion that attempts at repair were reasonable and made in good faith where general contractor discussed repair strategies with and obtained approved from the owner); *XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.,* 513 F.3d 146, 152-53 (5th Cir. 2008) ($4 million settlement was reasonable as a matter of law where it was supported by evidence that subcontractor-indemnitor settled with its employee for same amount as general contractor-indemnitee settled with its employee, there was also evidence that the subcontractor-indemnitor had settled with the general contractor-indemnitee's employee for an additional $1 million).

**Negligence**

HDR cannot recover under its negligence cause of action because it is barred by the economic loss rule. HDR and PSI contracted for professional services for the design of Oil Dock 6 and any remedy must be through the agreed allocation of economic risk found in the contract.

The economic loss rule bars tort claims when the damage, allegedly resulting from the defendant's tortious conduct, is only the economic loss to the subject of a contract. *ConocoPhillips Co. v. Koopmann*, 542 S.W.3d 643, 664 (Tex. App. 2016) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). In other words, when the damage complained of is limited to the loss of a contractual benefit, the remedy ordinarily is one of contract alone. *Id*.

**Admissibility of opinion's by HDR's retained expert John Bryant**

"And if an expert's opinion is based on certain assumptions about the facts, the Court cannot disregard evidence showing those assumptions were unfounded." City of Keller v. Wilson, 168 S.W.3d 802, 812–13 (Tex. 2005).

The standard under the newly enacted FEDERAL RULE OF EVIDENCE 702 is that, "expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements" by a preponderance of the evidence. *See* FED. R. EVID. 702 Advisory Committee's note to 2023 amendment. The advisory committee explained the need for the legislature to amend the rule:

> "[M]any courts have held that the critical questions of ***the sufficiency of an expert's basis***, and the application of the expert's methodology, are questions of weight and not admissibility. ***These rulings are an incorrect application of Rules 702 and 104(a)***.

> . . .
>
> [E]mphasizing the preponderance standard in Rule 702 specifically was made necessary by the courts that have failed to apply correctly the reliability requirements of that rule.

*Id*. (emphasis added). The Court need not admit an opinion based on facts that are indisputably wrong because an opinion based totally on incorrect facts will not speak to the case at hand and hence will be irrelevant. *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). "[S]uch an opinion will not advance the express goal of 'assisting the trier of fact' under rule 702." *Id*.

HDR contends that PSI's factual allegations for the exclusion of Dr. Bryant's conclusions are incorrect. Its arguments for limiting Dr. Bryant's testimony go to the weight, not to the admissibility, of his testimony on the challenged opinions. All of the opinions offered by Dr. Bryant in the Original and Supplemental Reports are well within his expertise and are relevant, reliable, and will be helpful to the jury in this case. FED. R. EVID. 702 & Adv. Comm. Note to 2023 Amendment; *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596 (U.S. 1993) *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (5th Cir. 2002); *Corinthian Court Holdings, LLC v. State Farm Fire & Cas. Co.*, No. 2:15-CV-111-KS-MTP, 2017 WL 1324135, at *2 (S.D. Miss. Apr. 6, 2017)

## 10. EXHIBITS

    A. *Attach an Exhibit List and make all listed exhibits available for examination by opposing counsel. Parties must mark each exhibit with the date, party's name, case number, and exhibit number.*

    B. *All documentary exhibits must be exchanged 30 days before trial, except for rebuttal exhibits and those whose use cannot be anticipated.*

    C. *A party requiring authentication of an exhibit must notify the offering counsel in writing within 7 days after the exhibit is listed and made available; failure to object in writing before trial concedes authenticity.*

    D.    *All objections to admissibility of exhibits must be filed 15 days after the JPO; objections must include copies of the disputed exhibit and legal authority. Responses to objections must be filed 15 days after the objections are filed. Failure to timely respond to an objection will be deemed lack of opposition resulting in the objection being sustained. Failure to timely objection to an exhibit or witness constitutes a waiver and deemed admission of that exhibit or witness. All rulings will be done by submission.*

    E.    *At trial, the first action a party will take during its case-in-chief will be to offer its exhibits into evidence.*

HDR's exhibit list is attached hereto as Exhibit A.

PSI's exhibit list is attached hereto as Exhibit B.

The Parties are continuing to conduct additional depositions and will amend their exhibit lists, if necessary, following the completion of the depositions.

## 11. WITNESSES

    A.    *Attach a Witness List with the names and addresses of witnesses to be called, along with a brief statement of the nature of their testimony.*

    B.    *If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses.*

HDR's witness list is attached hereto as Exhibit C.

PSI's witness list is attached hereto as Exhibit D.

The Parties are continuing to conduct additional depositions and will amend their witness lists, if necessary, following the completion of the depositions.

## 12. SETTLEMENT

The Parties attended a mediation, held on February 1, 2024, with mediator Bill Andrews. The parties were unable to resolve their disputes at that time. No settlement has been reached. The parties anticipate additional settlement discussions or negotiations between now and the time of trial.

13. **TRIAL**

*State the estimated length of trial and any potential logistical programs, including availability of witnesses, out-of-state people, bulky exhibits, and documentation.*

The estimated length of trial is one week. The parties do not anticipate any logistical problems with the presentation of evidence.

14. **ATTACHMENTS**

*Each party must file as a separate document (captioned, signed by counsel, and with service certified) the following required attachments in duplicate*:

A.  For a jury trial:

(1) Proposed questions for the *voir dire* examination.

HDR's proposed questions for the *voir dire* examination are attached as Exhibit E.

PSI's proposed questions for the *voir dire* examination are attached as Exhibit F.

(2) Proposed charge, including instructions, definitions, and special interrogatories, with authority.

HDR's proposed jury charge is attached as Exhibit G.

PSI's proposed jury charge is attached as Exhibit H.

Date: _____     _____
                                                UNITED STATES DISTRICT JUDGE

Approved:

Date: 2/23/2024_____     \_/s/ John Alex Huddleston_____
                                                          Attorney-in-Charge, HDR

Date: 2/23/2024_____     /s/ Alex Bell_____
                                                          Attorney-in-Charge, PSI